**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **LABORERS' PENSION FUND, LABORERS'** ) <br> **WELFARE FUND OF THE HEALTH AND** ) <br> **WELFARE DEPARTMENT OF THE** ) <br> **CONSTRUCTION AND GENERAL** ) <br> **LABORERS' DISTRICT COUNCIL OF** ) <br> **CHICAGO AND VICINITY, THE CHICAGO** ) <br> **LABORERS' DISTRICT COUNCIL RETIREE** ) <br> **HEALTH AND WELFARE FUND and** ) <br> **CATHERINE WENSKUS, not individually,** ) <br> but as Administrator of the Funds, ) <br>       **Plaintiffs,** ) <br>            ) <br> **v.**      ) <br>      ) <br> **WORLDWIDE WRECKING &** ) <br> **ENVIRONMENTAL SERVICES, INC.,** ) <br> an Illinois corporation,  ) <br>      ) <br>       **Defendant.**  ) | **Judge** <br><br> **Case No. 19-7597** |

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Chicago Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, not individually, but as Administrator of the Funds (hereinafter collectively the "Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska, Katherine C. V. Mosenson, and Sara S. Schumann, for their Complaint against Defendant Worldwide Wrecking & Environmental Services, Inc., an Illinois corporation, state:

## COUNT I
### (Failure to Submit Reports and Pay Fringe Benefit Contributions)

1.     Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.    Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.    The Funds are multiemployer Trusts established pursuant to Section 302(c)(5) of the LMRA, 29 U.S.C. §186(c)(5). The Funds maintain their respective Plans, which are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §1002(3) and 37(A), pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. The Funds have offices and conduct business within this District.

4.    Plaintiff Catherine Wenskus is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.    Defendant Worldwide Wrecking & Environmental Services, Inc., (hereinafter the "Company" or "Worldwide"), is an Illinois corporation. At all times relevant herein, the Company did business within this District and was an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

2

6.     The Union is a labor organization within the meaning of 29 U.S.C. §185(a).  The Union and the Company are parties to a collective bargaining agreement, the most recent of which became effective June 1, 2017 ("Agreement").  At all times relevant herein, the Company's employees performed work covered by the same Agreement. (A copy of the "short form" Agreement entered into between the Union and the Company which Agreement adopts and incorporates a Master Agreement between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust and the Agreements and Declarations of Trusts of the various Funds listed in Paragraph 7 below, is attached hereto as Exhibit A.)

7.     The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Trust Fund (the "Training Fund"), the Concrete Contractors' Association of Greater Chicago ("CCA"), the Chicago Area Independent Contractors Association ("CAICA"), the Builders' Association of Greater Chicago ("BAC"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Illinois Road Builders Association ("IRBA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Midwest Wall and Ceiling Contractors ("MWCC") the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Chicago Demolition Contractors' Association ("CDCA") and the Illinois Small Pavers Association ("ISPA") to act as an agent in the collection of contributions due to those funds.

8.     The Agreement, the Funds' respective Agreements and Declarations of Trust, and the Training Fund Agreement and Declaration of Trust, obligate the Company to make

contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, retiree health and welfare benefits, and for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, and the Training Fund Agreement and Declaration of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages plus interest.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement obligates the Company to obtain and maintain a surety bond to insure future wages, pension, and welfare contributions.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company performed Covered Work during the months of June 2019 forward but has:

    a.      failed to submit reports and pay all contributions to Plaintiff Laborers' Pension Fund for the period of June 2019 and August 2019 forward, thereby depriving the Laborers' Pension Fund of contributions, income, and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

    b.      failed to submit reports and pay all contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General

4

Laborers' District Council of Chicago and Vicinity for June 2019 and August 2019 forward, thereby depriving the Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

c.     failed to submit reports and pay all contributions to Plaintiff Chicago Laborers' District Council Retiree Health and Welfare Fund for June 2019 and August 2019 forward, thereby depriving the Retiree Welfare Fund of contributions, income, and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

d.     failed to submit reports and pay all contributions to the Laborers' Training Fund for June 2019 and August 2019 forward, thereby depriving the Laborers' Training Fund of contributions, income, and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries;

e.     failed to submit reports and pay all contributions owed to one or more of the other affiliated funds identified in Paragraph 7 above for the period of June 2019 and August 2019 forward, thereby depriving said fund(s) of contributions, income, and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries; and

f.     failed to obtain and maintain a surety bond in accordance with the Agreement.

12.     The Company's actions in failing to submit timely reports and contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA, 29 U.S.C. §185.

13.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, the terms of the Agreement  and the Funds' respective Trust Agreements, and federal common law, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid contributions, accumulated liquidated damages, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Worldwide Wrecking & Excavating Services, Inc.:

a.     Ordering Worldwide to submit benefit reports for June 2019 and August 2019 forward;

b.     entering judgment in sum certain against Worldwide on the amounts reported due and owing pursuant to the June 2019 and August 2019 forward benefits reports, in addition to interest, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs;

c.     ordering Worldwide to obtain and maintain a surety bond; and

d.     awarding Plaintiffs any further legal and equitable relief as the Court deems just and appropriate.

## COUNT II
### (Failure to Submit Reports and Pay Union Dues)

14.     Plaintiffs reallege paragraphs 1 through 13 of Count I as though fully set forth herein.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered

employees. Union dues which are not submitted in a timely fashion are assessed ten percent liquidated damages.

16. Notwithstanding the obligations imposed by the Agreement, the Company performed Covered Work during February 2019 forward, and has failed to submit dues reports and dues that were deducted or should have been deducted from the wages of its employees performing Covered Work during February 2019, April through June 2019, and September 2019 forward , thereby depriving the Union of income and information necessary to determine dues submission compliance.

17. Pursuant to the Agreement and federal common law, the Company is liable for the unpaid union dues, as well as liquidated damages, accumulated liquidated damages, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Worldwide Wrecking & Excavating Services, Inc.:

a. ordering Worldwide to submit its February 2019, April through June 2019, and September 2019 forward dues reports;

b. entering judgment in sum certain against Worldwide on the amounts due and owing pursuant to the February 2019, April through June 2019, and September 2019 forward dues reports, including contributions, liquidated damages, accumulated liquidated damages, and attorneys' fees and costs; and

c. awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

7

## COUNT III
### (Failure to Submit to an Audit to Determine Employee Benefit Contributions)

18.     Plaintiffs paragraphs 1 through 13 of Count I and paragraphs 14 through 17 as though fully set forth herein.

19.     Notwithstanding the obligations imposed by the Agreement and the Funds' Agreements and Declarations of Trust, Worldwide performed covered work during the time period of February 6, 2019 forward and has failed to submit its books and records to an audit to determine employee benefit contribution compliance for the time period of February 6, 2019 forward, thereby depriving the Funds of information needed to administer the Funds and jeopardizing the benefits of the participants and beneficiaries.

20.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Worldwide is liable for the costs of any audit for which legal action is necessary to obtain compliance with the audit process.

21.     Worldwide's actions in submit to an audit to determine benefit contribution compliance violate Section 515 of ERISA, 29 U.S.C §1145.

22.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, and the terms of the Agreement and the Funds' respective Trust Agreements, Worldwide is liable to the Funds for unpaid contributions revealed as owing on the audit, if any, as well as interest and liquidated damages on the unpaid contributions, audit costs, and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Worldwide Wrecking & Excavating Services, Inc.:

a.    ordering Worldwide to submit its books and records to an audit for the

time period of February 6, 2019 forward to determine benefit contribution compliance;

b.    retaining jurisdiction to enter judgment in sum certain on the amounts

revealed as owing on the audit, if any, including contributions, interest, liquidated

damages, accumulated liquidated damages, audit costs, and attorneys' fees and costs; and

c.    awarding Plaintiffs any further legal and equitable relief as the Court

deems appropriate.

### COUNT IV
### (Failure to Submit to an Audit to Determine Dues Contribution Compliance)

23.    Plaintiffs reallege Paragraphs 1 through 13 of Count I, Paragraphs 14 through 17

of Count II, and Paragraphs 18 through 22 of Count III, as though fully set forth herein.

24.    Notwithstanding the obligations imposed by the Agreement, Worldwide

performed covered work during the time period of February 6, 2019 forward and has failed to

submit its books and records to an audit to determine dues contribution compliance for the time

period of February 6, 2019 forward, thereby depriving the Union of information.

25.    Pursuant to the Agreement and federal common law, Worldwide is liable to the

Funds for the unpaid Union dues revealed as owing on the audit, if any, as well as liquidated

damages, accumulated liquidated damages, reasonable attorneys' fees and costs as the Union's

collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against

Worldwide Wrecking & Excavating Services, Inc.:

a.    ordering Rai to submit its books and records to an audit for the time period of

February 6, 2019 to determine dues contribution compliance;

    b.   retaining jurisdiction to enter judgment in sum certain on the amounts found

owing on the audit, if any, including contributions, liquidated damages, accumulated

liquidated damages, audit costs, and attorneys' fees and costs; and

    c.   awarding Plaintiffs any further legal and equitable relief as the Court deems

appropriate.

November 18, 2019                                          Laborers' Pension Fund, et al.

                                                          By:  /s/ Katherine Mosenson

Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 West Jackson Boulevard
Suite 1415
Chicago, Illinois 60604
(312) 692-1540



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8285 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between _Worldwide Wrecking & Environmental Services Inc._ ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 88, 75, 76, 152, 225, 681, 1001, 1005, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Roll Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017, $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorization deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appellate, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges that approvedness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing this provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any final and binding disposition anything to the contrary, notwithstanding any prohibition against binding arbitration at issue or withdrawal thereof the right of the Union to enforce an award, whether by grievance committee or arbitration. If costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to enter or withdraw the members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct covenant violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, or the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s). Incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreement, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given no less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its binding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: _FEB 6 ³⁴_ , 20 _19_

ACCEPTED:

Laborers' Local Union No. _225_

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _James P. Connolly, Business Manager_

By: _Charles LoVerde, Secretary-Treasurer_

For Office Use Only: _CDCA #_

_Worldwide Wrecking & Environmental Services Inc._ (Employer)

FEIN No.: _____

By: _Lewis M. Gibbins, Vice Pres._ (Print Name and Title)

_____ (Signature)

_401 N. Michigan Ave, Ste 1200_ (Address)

_Chicago_ (City, State and Zip Code) _60611_

_312. 840. 8200_ (Telephone/Telefax)

_lgibbins @ gmail.com_ (Email Address)

**EXHIBIT A**

Effective June 1, 2017    WHITE - LOCAL UNION • CANARY - TRUST FUND • PINK - DISTRICT COUNCIL • GOLD - EMPLOYER

RECEIVED APR 15 2019